Frank P. Mack, Respondent, *v.* Albee Press, Inc., Appellant.

First Department, January 16, 1942.

*Joseph F. Murray* of counsel [*Reginald V. Spell,* attorney], for the appellant.

*Joseph J. Jacobs,* for the respondent.

Untermyer, J. On March 14, 1939, the plaintiff, then sixty-two years of age, suffered injury at the defendant's premises in New York city. The injury was caused by the fall upon the plaintiff's left foot of a heavy printer's knife enclosed in a wooden case. The defendant has stipulated that the finding of the jury to the effect that the accident was caused by the defendant's negligence and without contributory negligence on the part of the

plaintiff will not be assailed on this appeal. After the accident the plaintiff was taken to the office of his physician for an examination of the injury. According to the plaintiff " the toes were discolored, and so was the whole foot discolored, and I had very much pain." X-rays of the foot established that there were no broken bones.

At the time of the accident it was known to the plaintiff, but unknown to the defendant and its representatives, that the plaintiff was suffering from diabetes. The medical testimony reveals that an injury, particularly to the foot of persons thus afflicted, frequently results in gangrene and the amputation of the leg. The plaintiff's physician, called as a witness by the plaintiff, testified that he had warned the plaintiff that " he had the bruised toe, and he had to rest it, and he had to be very careful;" and also that he " told him that if he isn't careful with his condition that eventually he would lose his leg. I always warn all diabetics about contusions, especially if it is in the foot." The plaintiff did not deny this testimony given by his own witness, except to say that the physician had never told him that he would lose his leg. He admitted that the doctor had told him " you can't tell what bruises sometimes will turn out to be."

As a result of negotiations between the plaintiff and an adjuster representing a company by which the defendant was insured, the plaintiff, in April, 1941, executed and delivered a release to the defendant, releasing it from all causes of action and claims " on account of or in any way growing out of any and all known and unknown personal injuries and property damage resulting or to result from accident that occurred on or about the 14th day of March 1939 * * *," and received in settlement the sum of $275. That amount was agreed upon in the belief that the plaintiff's injury would make it necessary that he forego work for a period of five weeks at a salary of forty-five dollars a week and that his doctor's bill would amount to about fifty dollars. The plaintiff testified that in signing the release he was also influenced by the opinion of the physician who had examined him for the insurance company, communicated to him by the adjuster, that he would be confined to his home not longer than " another two or three weeks," and would, therefore, not be out of work " more than about five weeks altogether." He testified that at that time " I started to feel better. My toes did not pain as much. My bone was bruised, I still had pain, but it wasn't severe. And that is why I signed the release when he came up to see me again."

Some time after executing the release the condition of the plaintiff's foot commenced to deteriorate due to the diabetes from which

he suffered, gangrene set in and not long thereafter it became necessary to amputate the leg. For the injury thus sustained the plaintiff has recovered judgment for $25,000 upon the theory that the release was executed under a mutual mistake of fact. That mistake of fact is described in the plaintiff's bill of particulars as follows: " Mistake of fact relied upon by the plaintiff is that he was not aware of the fact that he was to lose his leg at the time the alleged release was executed."

We think the record does not disclose any mutual mistake of fact, although it discloses a miscalculation by both parties of the consequences of the plaintiff's injury. Neither the plaintiff nor the defendant was mistaken concerning the extent of the injury, nor was either party mistaken concerning its character. The plaintiff knew, although the defendant's representatives did not know, that he was a sufferer from diabetes and, at least so far as concerns him, there was in this no mistake of fact. The plaintiff appears also to have known, although the absence of such knowledge would not necessarily affect the decision in the present case, that the consequences of such an injury to a diabetic might be very serious indeed. What the parties did not know was the tragic fact that the injury would result in the amputation of the plaintiff's leg. It may have been precisely this uncertainty, inherent in all calculations of the future, which induced the plaintiff to accept less and the defendant to pay more than they would otherwise have accepted or paid.

The rule of law which is applicable to these facts does not seem to be disputed. When the settlement is made on the assumption of the existence of a state of facts it may be rescinded if that state of facts does not presently exist. (*Landau* v. *Hertz Drivurself Stations, Inc.*, 237 App. Div. 141; *Great Northern R. Co.* v. *Fowler*, 136 Fed. 118, 121.) Where, however, there is no mistake concerning the injuries but only a miscalculation of consequences, the voluntary settlement of the parties is irrevocable as to both. (*Farrington* v. *Harlem Savings Bank*, 280 N. Y. 1, 4; *Miles* v. *New York Central R. R. Co.*, 195 App. Div. 748; appeal dismissed, 233 N. Y. 644; *Chicago & N. W. R. Co.* v. *Wilcox*, 116 Fed. 913.) Neither party may then rescind merely because the consequences of a known injury are more serious or less serious than had been anticipated. Such uncertainties are presumed to have been considered when the parties agreed upon the adjustment of their claims. (*Sears* v. *Grand Lodge A. O. U. W.*, 163 N. Y. 374, 378; *Kowalke* v. *Milwaukee Electric R. & Light Co.*, 103 Wis. 472, 479; 79 N. W. 762.) Otherwise, settlements fairly arrived at and releases voluntarily given become futile and nugatory, to be disregarded whenever the

course of events reveals that too much or too little has been paid. (*Dambmann* v. *Schulting*, 75 N. Y. 55, 64; *Kowalke* v. *Milwaukee Electric R. & Light Co., supra.*)   Although this may result in hardship in some cases, no other rule will preserve the right of persons of mature judgment to agree in good faith upon the compromise of claims.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., O'MALLEY and TOWNLEY, JJ., concur; GLENNON, J., dissents and votes to affirm.

GLENNON, J. (dissenting).   The following stipulation was entered into between the parties: " The questions of the negligence of the defendant and the negligence of the plaintiff contributing to the accident litigated upon the trial will not be raised by the defendant on the appeal."

The plaintiff instituted this action to set aside a release which he gave to the defendant upon the payment of $275.   The record which was presented to us contains only evidence material on the issue of rescission, which is the only issue before this court.   The jury by its verdict has found that the release was delivered and the money received in settlement due to a mutual mistake of fact.

Plaintiff was injured on defendant's premises on March 14, 1939, when he was struck on the foot by a wooden case.   He was taken to the office of his physician, Dr. Irving Margulies, who observed a contusion of the left great toe.   The latter said in reference to his initial examination of the injury: " It was at the second joint. There was a swelling.   There was an ecchymosis, that is, blood under the skin; and there was tenderness and pain.   And in examining him I found that his circulation was poor, and instead of putting on the regular splint I would ordinarily put on I had to be very careful and therefore I padded the foot and put adhesive plaster strapping underneath and above, and I told him to go home and rest it."

Prior to the accident, it might be well to note, the plaintiff had been suffering from diabetes for a number of years.   He had been on a diet.   He testified, " To keep away from sweets, and to keep away from candies, pies and cakes, but I could eat bread, a little, not much."   There was no physical or outward manifestation of the sugar in his blood nor any swelling of any kind prior to the accident.

Eight days after the accident Dr. Harry V. Spaulding, a physician representing the defendant, examined the plaintiff at his home and found that the toe was rather discolored and swollen and that the plaintiff complained of pain.   He was unaware of the fact that

plaintiff had been suffering from diabetes and he felt that plaintiff would be well within a week or ten days, and he so reported to his employer.

An employee of the Hartford Accident & Indemnity Company, on April 3, 1939, which was about two weeks after the accident, offered plaintiff the sum of $275 in settlement of his claim. In making this offer he was guided by Dr. Spaulding's report. There is a slight discrepancy between the testimony of the plaintiff and the adjuster as to the time of the delivery of the release. However, I do not deem it essential to go into the details which, in the main, were resolved by the jury in favor of the plaintiff.

Plaintiff's foot remained discolored continually and after the release was executed it became progressively worse until on July 7, 1939, plaintiff was removed to the Post Graduate Hospital. His left leg was amputated up to the mid-thigh on July twenty-eighth. Plaintiff testified that he would not have accepted the sum of $275 in settlement had he known that he was going to lose his leg as a result of the accident.

There is testimony in the record by physicians which is to the effect that the blow which the plaintiff sustained as the result of the falling object was the competent, producing cause of plaintiff's injuries and the subsequent amputation of his leg. His physician, Dr. Margulies, gave an explanation of what was described as "the process," as follows: "Anyone suffering with diabetes, there is an extra amount of sugar in the tissues; and with a man around sixty the blood vessels become involved, and they get a sclerosis or an inflammation in those blood vessels, in which the lumin of those blood vessels become smaller than the original — than originally — the circulation is not as good as it is in a healthy leg, a thrombus or a clot is more apt to form in those little blood vessels and close it off by any inflammatory process around there, and that is the beginning of gangrene."

Another physician, Dr. William H. Mencher, who was called in apparently as a consultant at the hospital before the operation, testified in part as follows: " So that in this particular case when the blow was struck, several things happened. This man already had a diminution in the amount of blood supply of the part, and the blow was sufficient to start off to cut off the small amount of nutrition that that part had, and on top of that came the secondary infection, and then that infection began to spread, and in spreading, swelling and redness takes place, temperature develops, and if amputation is not performed within a reasonable length of time, the man will die. Statistics, the mortality statistics, in these cases happen to be very high if you delay operation."

In referring to the release, the court, in charging the jury, said, in part:

" The sole claim of the plaintiff on this important question of the release is that the instrument was given and accepted — given by the plaintiff and accepted by the defendant — as a result of a mutual mistake of fact — a mutual mistake of fact.

" Of course ' mutual ' means two ways. A thing cannot be mutual if only one of the persons involved did or did not do something. If it is mutual it means that both parties partake of the doubleness or mutuality of the situation."

The jury by its verdict found that there was a mutual mistake of fact: In substance, that the plaintiff at the time he accepted the money was not aware of the fact that he had sustained internal injuries to his foot which would cause him to lose his left leg, while the defendant, on the other hand, did not know that plaintiff was suffering from diabetes and was not aware of the fact that the injury to his left foot was sufficient to cut off the small amount of nutrition it was receiving. Neither was the defendant aware that at the time the release was delivered conditions existed in plaintiff's left foot which then had not been discovered and which would result eventually in the amputation of his left leg. Defendant simply estimated that plaintiff would be unable to work for a period of five weeks and, consequently, paid him a sum sufficient to cover only his loss of salary and his doctor's bill.

The situation here presented is analogous to that which was before the court in *Dominicis* v. *United States Casualty Co.* (132 App. Div. 553). While the court in that case was dealing with the sufficiency of the complaint, still the reasoning is applicable. There Mr. Justice CHESTER said in part:

" It is asserted in the complaint that at the time the release was executed and delivered *conditions existed* in plaintiff's arm which had not then been discovered which would eventually necessitate its amputation; that neither the plaintiff nor the defendant then knew that those conditions existed, as was the fact, and that the settlement was made and the release signed in good faith under the common but mistaken belief that plaintiff would not lose his arm and upon a mutual mistake as to the conditions actually then existing in the arm that would eventually result in its loss.

" These are not in any sense allegations of opinions or beliefs, but of facts, and are sufficient, in our opinion, if proven, in connection with the other facts alleged, to establish a cause of action to rescind the release as founded upon a mutual mistake of fact."

Recently the United States Circuit Court of Appeals, Tenth Circuit, in *Tulsa City Lines* v. *Mains* (107 F. [2d] 377), had a case under review in which the facts were similar to those we now have before us. While the court was there dealing with the law of the State of Oklahoma, still the principles enunciated apply with equal force to the law of this State. In that case Circuit Judge BRATTON said, in part: " The attack on this release which the trial court sustained was that of mutual mistake. It is equally well settled law in Oklahoma that a release may be voided for mutual mistake of a past or present fact, material to the agreement; but it will not be set aside where the mistake is one of prophecy or opinion respecting the probable future developments or permanency of a known injury. When a release is challenged for mutual mistake, evidence clearly and convincingly establishing an innocent misrepresentation by a physician of the defendant in respect to the extent of the injuries sustained by plaintiff or the existing condition of plaintiff, made with intent that it be acted upon, and is relied upon by him, warrants cancellation of the instrument. Bad faith on the part of the physician is not an essential element. [Citing cases.] In cases of this kind it is sometimes difficult, if not impossible, to draw a distinct line of separation between mistakes relating to present and future facts. Here the statements of the physicians made to the injured woman were in composite that her injury consisted of a slight concussion, that it was slight, inconsequential and trivial, that rest was the remedy, and that she would recover in a few weeks. They were more than a prophecy. They were statements of the extent of the injury which she had sustained and of her then present condition. They were statements in respect to that which had happened, and an opinion in respect to that which would follow as the result. They were both a statement of a present fact and a prophecy as to the outcome. They were doubtless made in good faith, but the evidence leaves little room for doubt that the physicians were gravely mistaken as to the extent of the injuries which plaintiff had sustained and as to her then present condition. And the evidence likewise affords slight room for doubt that both parties relied upon such statements, and that the settlement and release were induced and brought about by them." (See, also, *Barry* v. *Lewis*, 259 App. Div. 496.)

For the reasons assigned the judgment should be affirmed.

Judgment reversed, with costs, and the complaint dismissed, with costs.