Benjamin Brenner, J.
Some 21 years ago, when he was two and a half years old, plaintiff sustained a skull fracture on descending a stairway in his house, due to an alleged defective mat maintained by the defendant bank. Plaintiff’s father negotiated settlement of the claim directly with one Devon, a representative of the defendant’s insurance carrier, and accepted $900 for the infant’s claim and $100 for his loss of services.
While inexpertly drawn, the complaint against the bank and its insurance carrier’s attorney, the individual defendant, alleges fraud and mutual mistake, seeking to rescind the settlement and the release upon which it is based. It also alleges deception of the court in the submission and procurement by the attorney of the order of compromise and seeks damages for same and for plaintiff’s injuries. The Statute of Limitations is not here involved nor is there an issue as to laches since it is not pleaded.
Upon trial plaintiff sought to establish fraud in the course of the settlement negotiations and evidence of such negotiations was ruled admissible only as it was relevant to the claimed deception of the Justice who signed the order of compromise, the latter deception being the only theory of fraud pleaded. However, regardless of the theory of suit, no fraud was shown to have been perpetrated during the course of settlement negotiations with Devon and none established against the carrier’s attorney who, I find on the facts, took no part in such negotiations.
Nor has plaintiff established his burden of proof as to the first cause of action that the settlement and the release delivered thereon were due to mutual mistake or a mistake on the part of the father, for I find that the latter was fully aware of the linear fracture of his son’s skull and that both parents lmew the infant’s condition when they accepted the settlement and the subsequent payments thereunder. It is established law that a release given for known injuries is a complete bar to any further claim. (Frehe v. Schildwachter, 289 N. Y. 250; Yehle v. New York Cent. R. R. Co., 267 App. Div. 301, affd. 295 N. Y. 874; Mack v. Albee Press, 263 App. Div. 275.)
But plaintiff lays stress on mutual mistake, claiming a failure on all sides to appreciate that the head injury would develop into mental retardation. If this were mere miscalculation as to the consequences of an injury then it would not amount to mutual *634 mistake and would be no basis for rescission (Mack v. Albee Press, supra) for the release covers not only the known injury which later may prove more serious but also all consequences resulting therefrom. Of course, a claim of mutual mistake is proper where the newly asserted and previously unknown injuries are entirely different or not the sequelae of a known injury, if not embraced in the release, nor the subject of the settlement negotiations (Scheer v. Long Is. R. R. Co., 282 App. Div. 724). The question is whether the claimed mental retardation here falls in the latter category. I think not. The linear skull fracture was a known injury. Since the mental retardation is claimed to flow therefrom, it would, if anything, be a foreseeable consequence of the known skull fracture, rendering the father’s miscalculation generally fatal to a later claim therefor.
Yet, were it not for the absence of evidence of causal relation between such newly claimed injury and the fracture, I should be constrained to depart from the general rule because of the inordinate speed of the settlement negotiations here proved. A mistake in behalf of an unrepresented infant in a situation involving serious brain damage to him could conceivably impel a court of equity to grant rescission even if the injuries are not ‘ ‘ entirely different ’ ’ from those first indicated, and even if such injuries are in fact reasonably consequent of a known injury. Overreaching insurance carriers rushing to effectuate settlements of claims involving serious injuries to persons who arc ignorant of the full significance of a release cannot expect it to be a bar to recovery for such unknown injuries. (Barry v. Lewis, 259 App. Div. 496.) The problem does not, however, arise in the instant case because credible medical evidence is to the effect that the claimed mental retardation was not caused by the accident of 21 years ago (such evidence is bolstered by the fact that plaintiff’s I. Q., though low, is superior to that of his uninjured brother). Indeed, it is questioned by medical authority whether mental retardation is at all one of the sequelae of a skull fracture.
The plaintiff has placed strong emphasis on alleged irregularities in the procurement of the compromise order. He has failed, however, to prove that if such irregularities existed, they affected the action of the Justice who approved the order nor did the plaintiff submit any proof that the proceedings for leave to compromise were not in conformity with rule 294 of the Buies of Civil Practice as the rule stood in 1936. The petition referred to a Police Blotter Beport of the accident to the effect that the infant was injured when sliding down a banister in the premises. Plaintiff contends that the blotter report of the accident was *635 incorrect because Ms father was an eyewitness to the occurrence, having witnessed the child’s fall over the defective mat and that defendant attorney was so informed. He claims that the petition should therefore have been based upon the petitioner’s direct knowledge. The differing versions of the occurrence, as they were made know to the attorney by the father and by the contents of the police blotter, justified his allegation of the facts upon information and belief, particularly since it was not clear whether the father’s information was based on direct knowledge or upon hearsay. At any rate, the claimed deception of the court, based on the form of such allegations, is not of sufficient substance to amount to fraud. Plaintiff has also failed to satisfactorily establish his contention that the petition and affidavits submitted on the compromise falsely reported the fact of an examination of the infant by Dr. Costello or that the findings of the doctor were untrue.
The nub of plaintiff’s real grievance is that the court sanctioned what, in terms of present money values, may be regarded as a nominal settlement through the efforts of an attorney engaged by the bank’s insurance carrier to represent him. Legal representation, involving conflict of interest, is, of course, fraught with the possibility of aibuse (Justice Thomas J. Cuff, in Bose v. Wehrli, 186 Misc. 325). Like others, I too, feel that such part of rule 294 of the Civil Practice Act, even as it is presently worded, which permits compromise papers to be prepared by defendant’s attorney in behalf of an unrepresented infant is most unwholesome. However, the rule as it stood in 1936 neither required nor forbade recommendation by such attorney relative to the terms of the settlement. (Under the present rule it is forbidden.) (Since he was not then forbidden to do so, the attorney did submit his opinion to the court but there is no evidence that he was in any way remiss or that he deceived the court as to the facts. On the contrary, he fully apprised the court as to the nature of the injuries and of the father’s version of the accident and how it differed from the contents of the police blotter. If, as the Justice was then empowered (and now enjoined) to do, the latter failed to examine the infant or inquire into the facts as to the reasonableness and propriety of the settlement, tMs was not the responsibility of the attorney, nor dereliction of duty on Ms part.
On all the evidence defendants are entitled to judgment dismissing the complaint, without costs.