CHARLIE HARTSELL, JR., EMPLOYEE, PLAINTIFF, v. PICKETT COTTON MILLS, INC., EMPLOYER, AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 6918IC57

(Filed 26 February 1969)

1. **Master and Servant §§ 85, 93— workmen's compensation — setting aside award — G.S. 1-220**

    G.S. 1-220, which authorizes a judge to set aside a judgment for mistake, inadvertence, surprise, or excusable neglect, does not apply to proceedings before the Industrial Commission, the Commission not being a court of general jurisdiction and having no jurisdiction except that conferred upon it by statute.

2. **Master and Servant § 93— compromise agreement — motion to set aside — mistake of fact — review before Full Commission**

    In a proceeding to set aside for mutual mistake of fact a compromise settlement agreement of a workmen's compensation claim which had been approved by the Industrial Commission, the Industrial Commission did not abuse its discretion in refusing to set aside the hearing commissioner's order denying plaintiff's motion to set aside the agreement and to remand the proceeding for the introduction of additional medical evidence by plaintiff where plaintiff was given every opportunity to present his evidence at a hearing upon his motion, and neither plaintiff nor defendant made a motion before the hearing commissioner that the hearing be continued for the taking of additional evidence.

APPEAL from opinion of 28 August 1968 entered by the North Carolina Industrial Commission.

On 8 November 1965 Charlie Hartsell, Jr., (plaintiff) received injuries to his back while performing a lifting operation in the course of his employment with Pickett Cotton Mills, Inc. (defendant-employer). The injury was accepted by the insurance carrier, American Mutual Liability Insurance Company (defendant-insurer) as a compensable claim under the North Carolina Workmen's Compensation Act. The plaintiff was examined by Dr. R. L. McDonald and then treated for some three weeks by a Dr. Smith, both of Thomasville, before becoming a patient of Dr. James A. Johnson, a neurosurgeon in High Point, on 3 January 1966. Dr. Johnson referred him to Dr. Robert C. Johnson, an orthopedic surgeon in High Point, and Dr. Richard H. Ames, a neurosurgeon in Greensboro, for consultation and evaluation. On 15 November 1966 Dr. James Johnson discharged the plaintiff as a patient.

On 4 January 1967 the plaintiff and defendants entered into a "clincher agreement" (agreement), which stated that the plaintiff had suffered a back injury and that he had received from the defendants weekly payments while out of work for a period of thirty-one and three-sevenths weeks covering a period through 28 November 1966. The agreement included the following quotation from Dr. James Johnson's report of 29 November 1966:

" 'I have been unable to arrive at a positive diagnosis of a herniated disc and in spite of two hospitalizations and multiple office visits, I am unable to explain all of his symptoms on an organic basis. At any rate, he does seem to have some discomfort in his back and in order to give him the benefit of the doubt I would feel that a rating of 15 percent is reasonable.' "

The agreement further set out that after reviewing x-rays and examining the plaintiff, Dr. Ames had reported that in his opinion the plaintiff had reached maximum improvement and that he could do nothing to benefit the plaintiff. In order to close the case, Dr. Ames also reported that he would be inclined to give the plaintiff a permanent partial disability rating of twenty percent of the back. The agreement further provided:

". . . I hereby expressly agree that any and all rights which I may have as a result of Section 47 of the North Carolina Workmen's Compensation Act (G.S. 97-47) giving me the right to reopen my claim for further compensation or medical benefits at any time is expressly waived hereby, and the Pickett Cotton Mills, Inc.,

and the American Mutual Liability Insurance Company are hereby released and discharged from any and all further liability to me by reason of any further or additional disability, medical expenses or any other benefits arising or growing out of any injury by accident on December 8, 1965. This agreement, release and payment are all subject to approval by the North Carolina Industrial Commission."

The agreement was submitted to the North Carolina Industrial Commission (Commission) and under date of 11 January 1967 it was approved with an award that the defendants should pay the plaintiff $1,968.75 in a lump sum without commutation and that the defendants should pay all medical expenses up to the date of the agreement and the costs.

After the approval of the agreement and the payment of all sums therein specified by the defendants, the plaintiff instituted this pro-. ceeding before the Commission. The date of its institution does not appear in the record. The first matter appearing in the record is a letter under date of 2 February 1968 from plaintiff's attorney to the Commission advising that it would be necessary to have the testimony of Dr. James Johnson and a doctor from the Veterans Administration Hospital in Durham and suggesting that it might be preferable to hold a hearing in Durham at    subsequent date to have the testimony of the doctor there. Und r date of 6 February 1968 the Secretary of the Commission wrote plaintiff's attorney advising that if the parties could not agree to submit a report from the doctor in Durham, a motion could be made to set a hearing in Durham.

On 22 and 23 May 1968 Deputy Commissioner Robert F. Thomas conducted a hearing in High Point. The plaintiff contended that there was a mutual mistake of fact on the part of all parties in entering into the "agreement and judgment." He therefore requested that the "agreement and judgment" be set aside and the case be reinstated.

At the hearing the plaintiff and defendants offered testimony, but the only medical testimony was that of Dr. James Johnson, a witness on behalf of the plaintiff. At the conclusion of the hearing the Deputy Commissioner inquired of the defendants whether they desired to reset the hearing in Greensboro in order to have the testimony of Dr. Ames. The attorney for the defendants stated that he thought this would be necessary. However, the Deputy Commissioner suggested that it might not be necessary and the attorney for the plaintiff stated: "Your Honor, I don't see that Dr. Ames' testimony is going to be necessary at all." The hearing was then adjourned,

and neither the plaintiff nor the defendants made a motion for any additional hearing in Greensboro, Durham or elsewhere.

Under date of 4 June 1968 the Deputy Commissioner filed an opinion and award denying the plaintiff's request to set aside this compromise settlement agreement. After receipt of the opinion and award the plaintiff's attorney wrote a letter under date of 10 June 1968 requesting for the first time a further hearing in order to permit the introduction of evidence of doctors from the Veterans Administration Hospital in Durham. This was treated as a notice of appeal to the full Commission.

The matter was heard by the full Commission on 28 August 1968, and it adopted and affirmed the opinion and award of the Deputy Commissioner in its entirety. The plaintiff appealed to the Court of Appeals.

*Stephen E. Lawing for plaintiff appellant.*

*Smith, Moore, Smith, Schell & Hunter by Richmond G. Bernhardt, Jr., for defendant appellees.*

CAMPBELL, J.

The plaintiff presents two questions for review, both of which stem from the contention that the Commission committed error in failing to set aside and vacate the opinion and award of the Deputy Commissioner on the basis of surprise and excusable neglect. The plaintiff asserts that G.S. 1-220 is applicable and that if it had been applied, the Commission should have set aside the findings of fact and award and proceeded to take additional evidence pertinent to the issue of mutual mistake of fact with reference to the execution of the agreement and the order approving same.

G.S. 1-220 provides:

> *"Mistake, surprise, excusable neglect.* — The judge shall, upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, order, verdict or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect, and may supply an omission in any proceeding. The clerk may hear and pass upon motions to set aside judgments rendered by him, whether for irregularity or under this section, and an appeal from his order on such motion shall lie to the judge at the next term, who shall hear and pass upon such motion de novo: Provided, however, nothing in this section shall be construed to affect the rights of

innocent purchasers for value in foreclosure proceedings where personal service is obtained."

[1]    This statute is not applicable to proceedings before the Commission, because "(t)he Industrial Commission is not a court of general jurisdiction. It has no jurisdiction except that conferred upon it by statute." (citation omitted) *Bryant v. Dougherty*, 267 N.C. 545, 148 S.E. 2d 548.

[2]    There is no merit in the plaintiff's position. This proceeding was instituted by the plaintiff for the purpose of setting aside the agreement on the ground of mutual mistake of fact. On 22 and 23 May 1968 a hearing was held and the plaintiff was given every opportunity to present his evidence. Under date of 6 February 1968 the Secretary of the Commission advised the plaintiff that if an agreement could not be reached for the submission "of the report of the Veterans Administration doctor as his testimony, you may move on February 14 that this case be reset later in Durham to permit you to offer additional medical evidence." However, neither the plaintiff nor defendants made a motion before the Deputy Commissioner to reset the hearing in Greensboro, Durham or elsewhere in order to take additional medical testimony. Although the defendants' attorney suggested on two occasions that he might desire a hearing in Greensboro in order to take the testimony of Dr. Ames, no motion to that effect was ever made. On the second such occasion, the plaintiff's attorney stated his opposition as follows: ". . . I don't see that Dr. Ames' testimony is going to be necessary at all." Therefore, the plaintiff, who opposed the taking of Dr. Ames' testimony in Greensboro, is not in a position now to say that he was in any way surprised when the defendants took no further action and permitted the Deputy Commissioner to go ahead and file his findings of fact and award. Certainly, the Commission did not abuse any discretion in refusing to permit the case to be reopened and the award set aside and further hearings conducted.

The evidence adduced in this record clearly supports the findings of fact of the Commission and the conclusions of law based thereon.

More than a year elapsed between plaintiff's injury and the consummation of the agreement. During all of this time the plaintiff complained of back trouble, and he was still complaining when he signed the agreement. In *Caudill v. Manufacturing Co.*, 258 N.C. 99, 128 S.E. 2d 128, which is a stronger case for the plaintiff than the instant case, the Supreme Court stated:

"A compromise is essentially an adjustment and settlement of

differences. If there are no differences or uncertainties there is no reason for compromise. The law permits compromise settlements between employers and employees who are bound by and subject to the Workmen's Compensation Act, provided they are submitted to and approved by the Industrial Commission. G.S. 97-17. The law thus undertakes to protect the rights of the employee in contracting with respect to his injuries. The presumption is that the Industrial Commission approves compromises only after a full investigation and a determination that the settlement is fair and just. In the instant case it is clear that the parties were contracting with reference to future uncertainties and were taking their chances as to future developments, relapses and complications, or lack thereof. If not, why the compromise and release? The nature and extent of the injury were known. These had been explored and discovered by surgery. Remedial action had been taken. The plaintiff was 'pressuring' for a settlement. The doctor gave a rating of 40 per cent disability and advised that it was a minimum rating and it was too early to give a permanent rating. The doctor stated that the abcess and osteomylitis which developed later were undiagnosable at the time he made the rating. His opinion, given at the hearing, that he had made a mistake was, as he said, 'in retrospect.' He stated that the abcess and osteomylitis *probably* did exist in October 1958 and *probably* had been there in a latent state. They were only consequences of a known injury and developed after the release was executed. There is no competent evidence that they were 'facts' at the time the compromise settlement was made and approved. The parties contracted with respect to such consequences. The mistake disclosed by this record is not such as will enable a court of equity to set aside a release."

The opinion and award of the Commission is

Affirmed.

BROCK and MORRIS, JJ., concur.