***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications; therefore, the Full Commission AFFIRMS the Opinion and Award of the Chief Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Chief Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act (hereinafter "Act").
2. At such time, an employment relationship existed between Employee-Plaintiff and Employer-Defendant.
3. Employee-Plaintiff is Brian Peltier.
4. Employer-Defendant is Greyhound Lines, Inc.
5. Cigna-ACE USA was the carrier on the risk for Greyhound Lines, Inc.
6. Greyhound Lines, Inc. regularly employs three or more employees and is bound by the provisions of the Act.
7. The North Carolina Industrial Commission (hereinafter "Commission") has jurisdiction over the parties and all parties have been properly named in this action.
 ***********
The following documents were entered into evidence at the evidentiary hearing before the Chief Deputy Commissioner as:
 EXHIBITS
1. Plaintiff's Exhibit #1: Plaintiff Motion to Continue, including amendments submitted December 12, 2001, which contains the factual and legal basis of plaintiff's contentions.
2. Defendant's Exhibit #1: Letter from Attorney H. Bright Lindler to Deputy Commissioner Edward Garner, Jr. dated January 28, 2000.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. This matter was originally heard before Deputy Commissioner Edward Garner, Jr. Jr. on June 9, 1999. At that time, Attorney H. Bright Lindler represented plaintiff and Attorney Anthony Lathrop represented defendants.
2. At the hearing before Deputy Commissioner Garner, plaintiff offered testimony with respect to his alleged occupational disease and trauma purportedly caused by on-the-job stress as a bus driver. Deputy Commissioner Garner also received into evidence pertinent medical records from Cape Fear Valley Hospital, North Ramsey Family Care, and Dr. Samuel H. Rosen.
3. After the hearing before Deputy Commissioner Garner, counsel for plaintiff and defendant conducted the deposition of Dr. Samuel H. Rosen, plaintiff's primary treating physician. Dr. Rosen testified that plaintiff's employment did not place him at increased risk for developing Psychotic Affective Disorder as compared to the general population of North Carolina.
4. Based on Dr. Rosen's testimony as to "increased risk," Attorney Lindler advised plaintiff that an essential element of plaintiff's case could not be proven and that plaintiff could recover nothing.
5. Attorney Lindler and counsel for defendant subsequently entered into settlement negotiations. An agreement was reached that defendant would pay a lump sum of $2,700.00 in return for a "clincher agreement." The sum negotiated essentially represented plaintiff's outstanding medical expenses and attorney fee. Given the deposition testimony by the primary treating physician, Dr. Rosen, Attorney Lindler advised plaintiff to accept defendant's settlement offer.
6. Plaintiff questioned the efficacy of entering into the settlement. In response, Attorney Lindler provided an attorney in South Carolina, who had referred plaintiff to Attorney Lindler, with a copy of Dr. Rosen's deposition. Plaintiff sought South Carolina counsel's advice. South Carolina counsel advised plaintiff that proof was lacking as to an essential element of plaintiff's action and that entering into settlement was a prudent resolution of the case.
7. Plaintiff executed the Compromise Settlement Agreement on January 6, 2000 following advice from both Attorney Lindler and South Carolina counsel. Attorney Lindler reviewed the agreement with plaintiff, explained the terms of the agreement and the consequences of entering into a binding settlement, and provided plaintiff an opportunity to read and review the document prior to plaintiff executing the Compromise Settlement Agreement.
8. At all times relevant, Attorney Lathrop, counsel for defendant, dealt solely through Attorney Lindler and had no direct communications with plaintiff.
9. The executed Compromise Settlement Agreement was submitted to Deputy Commissioner Garner prior to the evidentiary record being closed. Deputy Commissioner Edward Garner, Jr. entered an Order approving this Agreement on February 7, 2000. Deputy Commissioner Garner had before him at the time he approved the Compromise Settlement Agreement the following:
a. Plaintiff's trial testimony;
b. Dr. Rosen's deposition testimony and office notes;
 c. Medical Records of Dr. Nancy Henderson-Hines, plaintiff's family physician, including an independent evaluation of plaintiff from Cape Fear Neurology Associates, P.A.; and
 d. Cape Fear Valley Health System Medical Records for plaintiff.
10. Plaintiff's testimony in the present action establishes that Deputy Commissioner Garner had the relevant medical records from his health care providers before him when the Compromise Settlement Agreement was approved.
11. Plaintiff, at the time he executed the Compromise Settlement Agreement, understood the terms of the Agreement and the nature and consequences of his execution of the Agreement.
12. On July 20, 2000, plaintiff filed a document with the Industrial Commission seeking to set aside the Compromise Settlement Agreement. Plaintiff, in his written submission, contended that both Attorney Lindler and defendant's trial counsel procured the Compromise Settlement Agreement through fraud, misrepresentation and undue influence. Plaintiff asserted that Dr. Rosen's deposition testimony establishes his claim and that Deputy Commissioner Garner did not have Dr. Rosen's testimony at the time the Compromise Settlement Agreement was approved. In the hearing before the Chief Deputy Commissioner, plaintiff further contended that Dr. Rosen's testimony as to "increased risk" was in error. In support of his position, plaintiff included in his written submission a learned article on "urban" bus drivers and increased risk of stress related conditions.
13. Plaintiff's factual assertion that Deputy Commissioner Garner did not have the benefit of Dr. Rosen's testimony when approving the Compromise Settlement Agreement is not well taken. Plaintiff's assertion that Dr. Rosen's testimony establishes his right to compensation is not well taken.
14. Plaintiff presented no evidence that either his counsel or counsel for defendants committed any act of fraud in procuring the execution or approval of the Compromise Settlement Agreement. Counsel for defendants never communicated with plaintiff and his own counsel advised him based upon his understanding of North Carolina law and the facts of the case. In addition, plaintiff had the independent advice of counsel on South Carolina that was in accord with that of his counsel of record for this claim.
15. Plaintiff presented no evidence of undue influence from any source. Plaintiff's trial counsel and South Carolina attorney provided advice in accordance and within the bounds of the duty of an attorney at law. No evidence of record suggests that either counsel undertook any physical or emotional strategy in procuring plaintiff's execution of the Compromise Settlement Agreement other than providing counsel and advice.
16. Plaintiff has produced no evidence of a "mutual" mistake. Dr. Rosen's testimony as to "increased risk" is equivocal and substantially diminished the probability of success at trial. Assuming arguendo that Dr. Rosen's testimony is wrong, any erroneous expert opinion is not a mutual mistake.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. At that time the Compromise Settlement Agreement was executed, on January 6, 2000, plaintiff understood the nature of the Compromise Settlement Agreement, the manner in which his rights and interests would be affected by the Compromise Settlement Agreement, and the consequences of entering into a binding settlement. Plaintiff was full competent to enter into the Compromise Settlement Agreement. Ridings v. Ridings,286 S.E.2d 614 (1982).
2. Deputy Commissioner Edward Garner, Jr. approved the Compromise Settlement Agreement on February 7, 2000, after a full investigation and a determination that the settlement was fair and just to all parties.Hartsell v. Pickett Cotton Mills, Inc., 4 N.C. App. 67, 165 S.E.2d 792
(1969).
3. An agreement, once it is approved by the commission, is binding as an order, decision or award of the Commission. Martin v. PiedmontAsphalt and Paving Co., 113 N.C. App. 121, 437 S.E.2d 696 (1983).
4. Plaintiff has failed to meet the burden necessary to set aside the approved Compromise Settlement Agreement and produced no evidence whatsoever of fraud, misrepresentation, undue influence, or mutual mistake on the part of his own legal counsel, defendant's trial counsel, or any representative of defendant. N.C.G.S. § 97-17; see alsoBrookover v. Borden, Inc., 100 N.C. App. 754, 398 S.E.2d 604 (1990).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's petition to set aside the previously approved Compromise Settlement Agreement is DENIED.
2. Each side shall bear its own costs.
This the ___ day of August 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER