JACK L. CAUDILL, PLAINTIFF-EMPLOYEE v. CHATHAM MANUFACTURING COMPANY, DEFENDANT-EMPLOYER, AND HARTFORD ACCIDENT & INDEMNITY COMPANY, DEFENDANT-CARRIER.

(Filed 21 November 1962.)

**1. Torts § 7—**

A release executed by the injured party for a valuable consideration is a complete defense to an action by the injured party to recover damages for the injury, and the burden is upon the injured party, if he seeks to set the release aside for fraud, mistake, or other vitiating element, to prove the matters in avoidance.

**2. Compromise and Settlement—**

A compromise is an adjustment and settlement of differences, and if there are no differences or uncertainties there is no reason for compromise.

**3. Master and Servant § 67—**

Compromise settlements of claims under the Workmen's Compensation Act are permitted provided they are submitted to and approved by the Industrial Commission. G.S. 97-17.

**4. Torts § 7—**

A release from liability for personal injury may be set aside for mutual mistake based upon error in diagnosis, since such mistake relates to mistake of existing fact as to the extent of a known injury, but a release may not be set aside for mistake in prognosis, since such mistake relates to error in judgment or opinion as to the future course or consequences of a known injury, and is not a mistake of existing fact.

**5. Same; Compromise and Settlement; Master and Servant § 67—**
Compromise settlement of claim held to preclude additional recovery.

Claimant suffered a fracture of the verterbrae of his back at an existing spinal fusion. Claimant was paid for total temporary disability, and, after the apparent healing of the incision to correct the injury, claim for permanent partial disability was adjusted by a compromise settlement and release, executed by the parties and approved by the Industrial Commission, under which claimant accepted payment of a stipulated sum in settlement of all claims, past, present and future arising out of the accident in question, and waived his right to reopen his claim for change of condition. Thereafter an abscess developed in claimant's back at the site of the spinal fusion, and the medical expert testified that the abscess probably existed in a latent state at the time the settlement was executed but that such condition was undiagnosable, and that his prior opinion as to the percentage of permanent disability was erroneous. *Held:* The mistake related only to consequences of a known injury, and uncertainties in this regard were the subject matter of the compromise settlement, and therefore the mistake was not such as to warrant a court of equity in setting aside the release. .

PARKER AND HIGGINS, JJ., dissent.

APPEAL by defendants from McLean, J., March 26, 1962, Regular Civil "A" Term of MECKLENBURG.

This is a proceeding under the Workmen's Compensation Act (G.S., Ch. 97). The parties are subject to and bound by the provisions of the Act.

In 1957 plaintiff was 53 years of age and had been employed by defendant Chatham Manufacturing Company for 20 years. About 18 years prior to 1957 plaintiff received compensation for an injury to his lumbar spine, which injury arose out of and in the course of his employment. Surgery was performed, resulting in a spinal fusion. At that time he was given a rating of 25 per cent permanent partial disability of the back.

On 14 September 1957 plaintiff, in the course of his employment, stepped down from a platform and "felt something click in his back." Medical examination disclosed that he was injured in his back at the site of his former injury and the spinal fusion. Pursuant to an "Agreement for payment of compensation," approved by the Industrial Commission, plaintiff was paid compensation for temporary total disability in the total amount of $1295.00, for a period of 36 weeks ending 27 May 1958; and, in addition, medical expenses totaling $2369.36 were paid by the insurance carrier.

In the meantime plaintiff was admitted to the Charlotte Memorial Hospital on 25 September 1957, remained there for 28 days and received "conservative" treatment under the direction of Dr. Chalmers R. Carr, an orthopedic surgeon. Plaintiff returned to the hospital on 13 January 1958. Dr. Carr performed an operation to correct a fracture at the site of the old fusion. The incision became infected and this slowed recovery. Plaintiff remained in the hospital until 5 March 1958; the wound was draining at the time he left the hospital, but closed about two weeks later. Dr. Carr saw plaintiff in April and May following, and on both occasions X-Ray examinations were made. The incision had apparently healed. In May 1958 Dr. Carr, at the request of plaintiff's family physician and the insurance carrier, rated the injury as 40 per cent permanent partial disability of the back referable to the 1957 accident. In October 1958 plaintiff was "pressuring" his attorney to get a settlement. On 18 October 1958 the parties executed in writing an "Agreement for Final Compromise Settlement and Release." It was approved by the Industrial Commission on 10 November 1958. Pursuant to this agreement, defendants paid plaintiff $3000, and his attorney $150, in addition to payments theretofore made, and plaintiff accepted same in full, final and complete settlement of any and all claims, past, present and future, arising out of the accident in

question, and waived the right to reopen his claim because of changes of condition.

A few weeks after the compromise settlement a knot or abscess developed at the site of the operation. Dr. Hagaman, at the hospital in Boone, N. C., made an incision to drain the abscess. Plaintiff was again examined by Dr. Carr in July 1959. "He was found to have an abscess in his back at the site of the prior spinal fusion, which had been performed on January 15, 1958, said abscess connecting with the bone grafts which had been used at the time of the fusion, and being the development of an osteomylitis in the area of the spinal fusion. . . ." Plaintiff again underwent surgery and remained in the hospital about three months.

Plaintiff petitioned the Commission for a hearing, seeking to rescind the compromise agreement and release on the ground that it was induced by a mutual mistake of fact. At the hearing Dr. Carr testified in part as follows: "It is my opinion that it (the abscess and osteomylitis) probably did exist in October 1958 . . . it probably had been there in the latent state from the time of his original surgery in January 1958. . . . It is my opinion that as of July 26 of 1960, that he has to the best of my knowledge and judgment a disability of approximately 60 per cent as we normally rate things related to the back, by virtue of the condition of ankylosis and fibrosis and arthritis that exists in his back subsequent to his injuries, the surgical treatment and the complication. . . . I did not recognize in May of 1958 the condition which later proved to be present and in which, in retrospect, I now recognize as having been there but having been undiagnosable at that time. In the letter I wrote Dr. Hall, who was Mr. Caudill's family doctor and referring physician, I made mention of the fact that I thought it was too early to give a permanent rating, but to the best of my knowledge at that time the 40 per cent was certainly the minimum and a justifiable one. . . . I gave them a rating based on the facts I then saw, which I now feel professionally and in my opinion were in error."

The hearing Commissioner reviewed the facts, generally as hereinbefore set out, and concluded that the compromise agreement "was entered into and approved by the Commission under and as a result of a mutual mistake of fact to the claimant and the defendants and should be set aside under rules of the Commission for approval of agreements, Section XV, no. 2." The hearing Commissioner declared the compromise agreement null and void, ordered it set aside and the claim placed on the hearing docket to determine the amount of compensation, if any, due plaintiff.

Upon review, the full Commission affirmed the findings of fact, rulings and order of the hearing Commissioner. The Superior Court, on appeal, affirmed the opinion and award of the full Commission.

CAUDILL *v.* MANUFACTURING CO.

Defendants appeal.

*Henderson & Henderson and Joe T. Millsaps for plaintiff.*
*Kennedy, Covington, Lobdell & Hickman and Edgar Love, III, for defendants.*

MOORE, J.   One of the questions posed by this appeal is whether the mutual mistake of fact upon which plaintiff relies is such as will permit a court exercising equity jurisdiction to annul the compromise agreement and release.

"A release executed by the injured party and based on a valuable consideration is a complete defense to an action for damages for the injuries and where the execution of such release is admitted or established by the evidence it is necessary for the plaintiff (releasor) to prove the matter in avoidance." *Ward v. Heath,* 222 N.C. 470, 24 S.E. 2d 5. We have held that a release from liability for personal injury may be set aside for mutual mistake of fact. *Cheek v. R.R.,* 214 N.C. 152, 198 S.E. 626. And it has been declared that "a mistake of fact takes place when some material fact, which really exists, is unknown, or some essential fact is supposed to exist which really does not exist." *Freeman v. Croom,* 172 N.C. 524, 90 S.E. 523.

The class of cases in which it is sought to rescind releases and compromise settlements for mutual mistake of fact as to the nature, extent and consequences of personal injuries is said to be *sui generis. Clancy v. Pacenti,* 145 N.E. 2d 802, 71 A.L.R. 2d 77 (Ill. 1957). We have no case in this jurisdiction sufficiently in point to be controlling on this appeal. There is no uniformity of opinion in other jurisdictions. Cases are legion, and opinions range from strict enforcement of releases according to their terms, in the absence of fraud, to the so-called "liberal view" in which releases are set aside almost without rule and according to the notion of the particular court. The cases are assembled and discussed in the following annotations. 71 A.L.R. 2d 82, Anno: Personal Injury — Release — Avoidance; 117 A.L.R. 1022, Anno. — Release — Personal Injuries — Avoidance; 48 A.L.R. 1462, Anno. — Release — Personal Injuries — Avoidance.

.  What seems to us to be the general principles followed by a majority of the courts are set out in 76 C.J.S., Release, s. 25a, pp. 645-647, as follows:

"A release may be avoided where the releasor can show that it was executed by mutual mistake, as between himself and the releasee, of a past or present fact, material to the release or the agreement to release, as where there was a mutual mistake as to

the nature, extent or degree of gravity of the releasor's injury, unless it further appears that the parties intended that claims for all injuries, whether known or unknown at the time of the execution of the release, be relinquished. . . .

"The mistake must be as to a present, existing fact, or a past fact; a mistake in prophecy, or in opinion, or in belief relative to an uncertain future event, such as the probable developments from, quickness of recovery from, and the permanence of, a known injury, is not such a mutual mistake as will avoid the release; nor does conscious ignorance of a fact amount to a mistake.

"In determining whether a release was executed under a mutual mistake, all of the circumstances relating to the signing must be taken into consideration, including the sum paid for the release. A factor to be considered in cases of this kind is whether the question of liability was in dispute at the time of the settlement. The source or author of the mistake is of no consequence if the parties in good faith relied on it, or were misled by it, and the releasor was thereby induced to release a liability, which he would not otherwise have done."

The following are illustrative of the cases in which releases were rescinded on the ground of mutual mistake as to the nature and extent of the injuries to releasors: In *Clancy v. Pacenti, supra,* plaintiff was injured in an automobile accident. She executed a release for a consideration of $150 on the assumption she had no more than a muscle sprain, when in fact she had two herniated discs. The release was set aside and the court awarded damages in the amount of $22,500. *Crane Co. v. Newman,* 37 N.E. 2d 732 (Ind. 1941), was an action for damages for injury suffered by plaintiff in falling down an elevator shaft. He was assured by defendant's physician that his injuries were superficial, and for $140 he released defendant. Afterwards it was discovered that he had a broken back and was permanently injured. The release was set aside and a recovery of $10,000 allowed. *McKissick v. Penn. Brook Coal Co.,* 168 A. 691 (Pa. 1933), was a workmen's compensation case. A final receipt was signed on the assumption of both parties that claimant had suffered a slight concussion, when in fact he had a depressed fracture of the right frontal bone and a fracture at the base of the skull. The settlement was vacated and further compensation awarded. In *Poti v. New England Road Machinery Co.,* 140 A. 587 (N.H. 1928), plaintiff executed a release on the basis of a bruise on his leg and physician's opinion there would be a recovery within a few weeks. But in truth the muscles of the leg were so severely injured that they came away from the bone, a serious sore

developed and plaintiff was permanently injured. See also: *Serr v. Biwabik Concrete Aggregate Co.*, 278 N.W. 355 (Minn. 1938); *Shetina v. Pittsburgh Terminal Coal Corporation*, 179 A. 776 (Pa. 1935), a workmen's compensation case. It will be observed that in all of these cases the true nature and extent of the injuries, as they existed at the time of the execution of the releases, were unknown. It is the majority view that releases may be set aside for mutual mistake of fact when the nature and extent of injury, as it existed at the time the release was executed, were unknown, unless there is an overriding factor, as, for instance, questionable liability where releasee merely buys his peace.

Some courts have been reluctant to upset settlements and releases, in the absence of fraud, even where there were mutual mistakes as to the nature and extent of the injuries. *Reinhardt v. Wilbur*, 105 A. 2d 415 (N.J. 1954); *Caffey v. Aetna Casualty & Surety Co.*, 219 S.W. 2d 530 (Tex. 1949); *Grace v. Eisenhuth*, 150 S. 398 (La. 1933).

Many courts have refused to set aside releases where the mistake consisted of unforeseen consequences of known injuries, that is, where the nature and extent of the injuries were known at the time of the execution of the release, but later developments were more serious than had been anticipated by physician or the parties. The following are examples: In *Mendenhall v. Vandeventer*, 299 P. 2d 457 (N.M. 1956), plaintiff had undergone an operation for an elbow fracture, and on the opinion of the doctor that he would recover within four to six weeks, he made a compromise settlement and executed a release. Afterwards there were complications and further surgery was necessary. The court ruled that the parties had contracted with reference to future possibilities, foundation for rescission can be laid only by mistake of past or present fact material to the agreement, and such effect cannot be produced by a mistake in prophecy or in opinion — such not being *facts*. *Tewksbury v. Fellsway Laundry*, 65 N.E. 2d 918 (Mass. 1946), involved a release by plaintiff who had suffered abrasions of the face, injury to the right hip, laceration in the groin and fracture of the right femur. She afterwards developed osteomylitis. The court, refusing to set the release aside, said: ". . . (T)he mistake must relate to a past or present fact material to the contract and not an opinion respecting future conditions as a result of present facts." *Bee v. Chicopee Mfg. Corporation*, 55 A 2d 897 (N.H. 1947) is a workmen's compensation case. Claimant underwent surgery for removal of coccyx, and thereafter agreed to a settlement and signed a release. A permanent nerve involvement developed. The court decided it was not a case for rescission of release, and stated that claimant had contracted with reference to the uncertainties, and the fact that she was unable

to resume work within the period suggested by her attending physician amounted to a mistake in prognosis. *Reichner v. P. Blakiston's Son & Co.*, 175 A. 872 (Pa. 1934), is also a workman's compensation case. Claimant suffered an injury to his leg; he entered into a compromise agreement which was approved by the Compensation Board. He later petitioned to reopen the case on the ground that he had executed the agreement in ignorance of the fact that the infection from the injured leg did affect and would thereafter affect and aggrevate a weakened heart condition known as myocarditis. The case was not reopened. See also *Mack v. Albee Press, Inc.*, 32 N.Y.S. 2d 231 (1942), in which it is said that a miscalculation of consequences does not avoid a release.

It is generally recognized that there is a distinction between the extent of a known injury as an existing fact and its consequences as a matter of opinion, though the distinction in some instances is a narrow one. ". . . (I)t does not follow that an opinion as to the extent of an injury is part of the opinion as to the consequences merely because the latter is predicated upon the former. . . . (O)ne relates to facts of the past and present, and the other relates to inquiry into the future." *Poti v. New England Road Machinery Co., supra.* Some courts do not recognize that there is a distinction. In *Granger v. Chicao, M. & St. P. Ry. Co.*, 215 N.W. 576 (Wis. 1927), plaintiff signed a release six months after he was injured and after employer's physician had stated that plaintiff was "pretty well along toward being cured." Plaintiff's condition continued serious and the period of recovery greatly extended. The court declared: "The statement made by the doctor . . . is not a mere expression of opinion as to future events. It was a representation as to existing facts upon which both the plaintiff and the Company had the right to rely." *Denton v. Utley*, 86 N.W. 2d 537 (Mich. 1957), involved an injury suffered in an automobile accident. Not knowing that he had been injured in the accident, plaintiff executed a general release in settling property damage. It was later discovered that he had been seriously injured. He was probably entitled to rescission under the majority view, but the following is from the opinion delivered by Mr. Justice Smith: ". . . (W)e may well ask, as a practical matter (as distinguished from a verbal technique), is it possible to completely divorce diagnosis from prognosis? Is there not an interrelation, even if not an interdependence? Is not a doctor's opinion as to prospects of recovery a representation as to an existing factual situation upon which all parties should be entitled to rely?" The opinion in substance answers the first question in the negative and the second and third in the affirmative. It is noted that three Justices concurred, four concurred in the result, and one did not sit.

Among North Carolina cases the one most nearly analogous to the instant case is *Morgan v. Norwood,* 211 N.C. 600, 191 S.E. 345. Therein a compromise settlement was approved by the Industrial Commission. Claimant petitioned for a rehearing on the ground that his condition (hearing) had grown worse, he had become permanently disabled, and had been compelled to compromise his claim because of his extreme need. The Court held that the settlement was binding and final, and commented that there was no allegation or proof that it was obtained by fraud or mutual mistake. Both appellant and appellee, in the case at bar, appear to find comfort in this decision. But to us it is not sufficiently definitive to furnish guidance.

A compromise is essentially an adjustment and settlement of differences. If there are no differences or uncertainties there is no reason for compromise. The law permits compromise settlements between employers and employees who are bound by and subject to the Workmen's Compensation Act, provided they are submitted to and approved by the Industrial Commission. G.S. 97-17. The law thus undertakes to protect the rights of the employee in contracting with respect to his injuries. The presumption is that the Industrial Commission approves compromises only after a full investigation and a determination that the settlement is fair and just. In the instant case it is clear that the parties were contracting with reference to future uncertainties and were taking their chances as to future developments, relapses and complications, or lack thereof. If not, why the compromise and release? The nature and extent of the injury were known. These had been explored and discovered by surgery. Remedial action had been taken. The plaintiff was "pressuring" for a settlement. The doctor gave a rating of 40 per cent disability and advised that it was a minimum rating and it was too early to give a permanent rating. The doctor stated that the abscess and osteomylitis which developed later were undiagnosable at the time he made the rating. His opinion, given at the hearing, that he had made a mistake was, as he said, "in retrospect." He stated that the abscess and osteomylitis *probably* did exist in October 1958 and *probably* had been there in a latent state. They were only consequences of a known injury and developed after the release was executed. There is no competent evidence that they were "facts" at the time the compromise settlement was made and approved. The parties contracted with respect to such consequences. The mistake disclosed by this record is not such as will enable a court of equity to set aside a release.

We do not reach, and we make no decision with respect to, the question as to whether the Industrial Commission has inherent equitable jurisdiction to rescind and set aside settlements and compromise

settlements, approved by them, on the ground of mutual mistake of fact. The Legislatures of some States have conferred such jurisdiction by statute. We find no such provision in the North Carolina Workmen's Compensation Act. The General Assembly may desire to give the matter consideration. If the Industrial Commission presently has no such jurisdiction by implication, it cannot confer such jurisdicton upon itself in the exercise of its rule making authority. *Evans v. Times Co.*, 246 N.C. 669, 100 S.E. 2d 75.

This case is remanded to Superior Court with direction that it be returned to the Industrial Commission that an order may be entered in accordance with this opinion.

Error and remanded.

PARKER & HIGGINS, JJ., dissent.