The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner; the appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Deputy Commissioner's Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the evidentiary hearing and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Defendant is a duly Self-Insured and Southeastern Claims is the servicing agent.
4. Plaintiff sustained a compensable injury by accident to his left ankle on February 13, 1998.
5. Plaintiff's average weekly wage yielding a compensation rate of $341.24 per week.
6. The North Carolina Industrial Commission approved a Compromise Settlement Agreement concerning this claim on October 23, 1998.
7. Stephen R. Schafer, M.D., relied on Dr. Buter's records and opinions in addition to his own physical examination in producing the documents that he provided regarding plaintiff.
8. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1.
9. The Compromise Settlement Agreement approved on October 23, 1998 was stipulated into evidence as Stipulated Exhibit 3.
10. The Order approving the Compromise Settlement Agreement signed by Deputy Commissioner Amy L. Pfeiffer was stipulated into evidence as Stipulated Exhibit 4.
11. W-2 and Earning Summaries were stipulated into evidence as Stipulated Exhibit 5.
12. The issues before the Full Commission are: (i) whether the settlement agreement should be set aside in order to enable plaintiff to receive additional benefits; and (ii) whether plaintiff is entitled to additional compensation as result of his compensable injury on February 13, 1998?
 ***********
Based upon all the competent evidence adduced at the evidentiary hearing, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On February 13, 1998, plaintiff was working as a roofer for defendant-employer. Plaintiff fell and sustained a displaced distal tibial shaft fracture, a proximal fibular fracture and retained a plate and screws from a previous ankle fracture.
2. Thomas H. Buter, M.D., treated plaintiff on February 13, 1998, and performed an open reduction and internal fixation of the fracture with a compression plate.
3. The fracture remained in good position and plaintiff attained a high level of function.
4. On June 16, 1998, plaintiff reached maximum medical improvement and was given a ten (10%) percent permanent partial disability rating.
5. Plaintiff received a second opinion from Southeastern Orthopedic Evaluation Centers. Dr. Shaffer indicated plaintiff had a seventeen (17%) percent permanent partial disability rating based upon Dr. Buter's medical records. Dr. Shaffer indicated there was no need for future medical treatment or care related to the February 13, 1998, accident unless it would be the removal of the hardware at some point in time should it become symptomatic.
6. Plaintiff was represented by counsel at the time of reaching maximum medical improvement and receiving the permanent partial disability ratings. Through his attorney, plaintiff settled his case for $11,000.00.
7. Plaintiff continued to have pain similar to that which he had before he was released from Dr. Buter's care.
8. Plaintiff understood the pain he had would eventually go away. The pain did not subside, and plaintiff returned to Charlotte Orthopedic Specialists to have a further evaluation.
9. Thomas H. McCoy, M.D., president of Charlotte Orthopedic Specialists, took over plaintiff's treatment.
10. Dr. McCoy determined on June 16, 1998, plaintiff had not healed and a non-union of the bones existed. Dr. McCoy indicated that plaintiff had not achieved maximum medical improvement on June 16, 1998.
11. Dr. McCoy also indicated plaintiff had not healed and had not reached maximum medical improvement as result of the subsequent developments in this matter. Dr. McCoy indicated that plaintiff had an obvious non-union of his original fracture.
12. Dr. Buter, plaintiff's treating physician, agrees with Dr. McCoy's assessment regarding the lack of union and lack of maximum medical improvement on June 16, 1998.
13. Plaintiff had not had a subsequent trauma after June 16, 1998, that caused a non-union.
14. Dr. McCoy and Dr. Buter indicate the assessment plaintiff was at maximum medical improvement was a mistake.
15. Plaintiff and his former counsel, Jeff Warren, relied upon Dr. Buter's determination that plaintiff was at maximum medical improvement while negotiating the settlement agreement.
16. Plaintiff and former plaintiff's counsel indicate no settlement negotiations would have ever taken place had plaintiff and plaintiff's attorney understood plaintiff was not at maximum medical improvement.
17. Tina Tucker, the insurance adjuster from Southeastern Claims, relied on Dr. Buter's medical records while negotiating the settlement agreement. Ms. Tucker indicated she would not have initiated negotiations or pursued negotiations if she had understood plaintiff had not been released by his treating physician and had not received a rating.
18. Ms. Tucker did not contemplate a future open reduction internal fixation and bone grafting for plaintiff at the time she negotiated the settlement agreement.
19. On November 22, 1999, plaintiff underwent open reduction internal fixation and bone grafting with an intramedullary rod. Dr. McCoy performed this surgery. Because of this surgery, plaintiff was out of work for six (6) months.
20. Dr. McCoy has assigned plaintiff a twenty-five (25%) disability to his leg which is largely based upon plaintiff's leg which was actually shortened as result of this process.
21. Both plaintiff, plaintiff's counsel, and the claims adjuster in this case relied upon a mutual mistake of fact that plaintiff had reached maximum medical improvement and that plaintiff's disability rating was correct. In fact, plaintiff had a non-fusion and was in need of additional medical treatment at the time the settlement was signed.
22. At the time the settlement was signed, it was impossible based upon the non-union to be able to ascertain what permanent partial disability rating was appropriate in this case.
23. Plaintiff is entitled to receive additional benefits as result of his non-union and subsequent surgery.
24. Based upon mutual mistake, there is just cause to set aside the settlement agreement in this case.
 ***********
The foregoing findings of fact and conclusions of law engender the following
 CONCLUSIONS OF LAW
1. On February 13, 1998, plaintiff sustained an injury by accident to his left ankle. N.C.G.S. § 97-2(6).
2. Plaintiff has received medical treatment relating to his compensable injury by accident. N.C.G.S. § 97-25.
3. On October 23, 1998, the Commission approved a Compromise Settlement Agreement in this matter. N.C.G.S. § 97-82; N.C.G.S. § 97-17.
4. The parties relied on a mutual mistake of fact that plaintiff was at maximum medical improvement and had received an appropriate permanent partial disability rating as result of being at maximum medical improvement. Therefore, the settlement agreement approved by the North Carolina Industrial Commission should be set aside. N.C.G.S. § 97-17;Caudill v. Chatham Manufacturing Company, 258 N.C. 99, 128 S.E.2d 128
(1962).
5. Plaintiff is entitled to an additional six (6) months of compensation at a rate of $341.24 per week. N.C.G.S. § 97-29.
6. Defendant is entitled to a credit for the monies paid pursuant to the settlement agreement approved on October 23, 1998. This credit shall be applied to the compensation award and the permanent partial disability rating. N.C.G.S. § 97-42.
7. Defendant's counsel has made a tenable argument that the Compromise Settlement Agreement was settled for sums greater than the pending impairment ratings and that the additional sums were paid to compensate plaintiff with the understanding that the opinions of medical doctors are not facts and that plaintiff's medical condition may be different from the opinions represented by the doctors. The Full Commission acknowledges that a Compromise Settlement Agreement may be worded, in the proper case, to express the uncertainty of the status of plaintiff's medical condition and to place the risk on the parties as to the fairness of the settlement based on reasonable question as to the validity of the medical opinions. This circumstance, however, was not presented in this case. The Agreement of Final Settlement and Release (the Compromise Settlement Agreement) expressly states in a recital paragraph that "Dr. Buter determined that employee had reached maximum medical improvement and released him from his care with a ten percent (10%) permanent partial impairment rating to his left foot." Nothing in the agreement questions the validity of this statement or otherwise advises the parties that the settlement is negotiated with the belief or understanding of any party that this statement of medical fact may not be correct. Without language indicating that additional sums are paid in settlement based on the possibility that the medical diagnosis, rating, or the like is in error, defendant's argument must fail. Without language acknowledging that one or more of the parties to the agreement does not rely on the accuracy of material recitals, the failure of such recital must be evaluated under the doctrine of mutual mistake. N.C.G.S. § 97-17.
8. Plaintiff is entitled to a twenty-five (25%) permanent partial disability rating to his leg. N.C.G.S. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. For his total disability as result of the subsequent operation to correct his compensable injury by accident, plaintiff is entitled to total disability compensation for six (6) months. Defendant shall receive a credit for the amount previously paid pursuant to the settlement agreement in regards to this compensation. Said amount shall be paid in a lump sum, subject to an attorney's fee approved in Paragraph 4.
2. Defendant shall pay plaintiff for his twenty-five (25%) percent permanent partial disability rating. Defendant is entitled to a credit for amount previously paid pursuant to the settlement agreement.
3. Defendant shall pay for subsequent medical treatment provided by Dr. McCoy as result of plaintiff's compensable injury by accident.
4. A reasonable attorney's fee of twenty-five (25%) percent of compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of lump sum due plaintiff under Paragraphs 1 and 2 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel.
5. Defendant shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIR
 S/_____________ THOMAS J. BOLCH COMMISSIONER