***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer.
3. Lumbermans Mutual Casualty Company was the carrier on the risk for workers' compensation purposes.
4. Plaintiff's average weekly wage was $225.00 per week. This wage yields a compensation rate of $150.01.
5. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment to his back on 5 August 1994.
6. Plaintiff was diagnosed with a herniated disc at L5-S1, and on 7 October 1994 he underwent surgery performed by Dr. Steward Harley. Plaintiff was thereafter released from care with a 10% permanent partial impairment rating. Plaintiff was also released to return to work as a truck driver. Dr. Harley prescribed a corset and recommended plaintiff use a pillow when driving his truck.
7. On or about 7 February 1995, plaintiff and defendants entered into an agreement to settle plaintiff's workers' compensation claim. Attorney Anthony T. Lathrop was retained by defendants to draft a Compromise Settlement Agreement. On 14 February 1995, plaintiff, who was not represented by legal counsel, signed this agreement. The agreement was approved by the Industrial Commission on 2 March 1995, and plaintiff received compensation in the amount of $10,000.00 pursuant to the approved agreement.
8. Plaintiff thereafter retained legal counsel. On 27 February 1997, plaintiff's counsel filed a Motion to Set Aside the Compromise Settlement Agreement. Plaintiff's counsel also filed a request for a hearing claiming a change of condition.
9. On 5 September 1997, plaintiff's counsel deposed then-Special Deputy Commissioner Ronnie E. Rowell of the North Carolina Industrial Commission. A copy of the deposition transcript is a part of the Industrial Commission file in this matter, and is made a part of the evidentiary record in this case.
10. On 3 December 1997, Deputy Commissioner Kim L. Cramer heard this case in Franklin. Upon agreement of the parties, the hearing was limited to the sole issue of whether the compromise settlement agreement could be set aside. At the hearing, plaintiff's counsel moved for production of the insurance carrier's claim file and for permission to call Anthony Lathrop, former defense counsel, as a witness. Defendants objected to plaintiff's motions. Thereafter, plaintiff's counsel wrote to Deputy Commissioner Cramer on 15 December 1997, and made a motion to compel the production of additional evidence.
11. On 11 June 1998, Deputy Commissioner Cramer entered an order denying plaintiff's motion to take Anthony Lathrop's testimony and further denying plaintiff's motion for production of the claim file. Plaintiff had also made an alternative motion for voluntary dismissal of the claim without prejudice. Deputy Commissioner Cramer also denied this motion in the 11 June 1998 order.
12. On 8 October 1998, Deputy Commissioner Cramer entered an order dismissing plaintiff's claim. The order stated that, "[u]pon further consideration," the deputy commissioner was of the opinion that plaintiff's motion for a voluntary dismissal should be allowed.
13. Plaintiff's counsel filed a Form 33 on 12 November 1998 to request a hearing in the matter. Defendants retained attorney L. Kristin King as counsel.
14. This case was scheduled to be heard by Deputy Commissioner Mary Moore Hoag in Sylva on 15 April 1999. The parties entered into a pretrial agreement dated 6 April 1999. That pretrial agreement is incorporated by reference into the evidentiary record in this case. Deputy Commissioner Hoag continued this case from the 15 April 1999 hearing calendar.
15. Defendants filed a motion to bifurcate the proceedings. On 8 September 1999 Deputy Commissioner Hoag entered an order granting defendants' motion for a bifurcation of the proceedings. It was ordered that the case would be placed on the next available docket and that the issues would be limited to: (1) whether the compromise settlement agreement approved by the Commission on 2 March 1995 should be set aside for the reasons set forth in Vernon v. Mabe, 366 N.C. 425 (1994); (2) whether the compromise settlement agreement approved by the Commission on 2 March 1995 should be set aside pursuant to N.C. Gen. Stat. § 97-17; and/or (3) whether defendants are entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
16. This case then appeared on the hearing calendar of Deputy Commissioner Stephen T. Gheen for 14 November 2000 in Murphy. This case was continued from this hearing docket.
17. Deputy Commissioner Amy L. Pfeiffer then scheduled this case for hearing in Franklin on 23 January 2001. The parties, however, agreed that a hearing was not necessary, and that the parties could instead stipulate to certain facts and evidence in lieu of taking testimony at a hearing. The parties agreed to take the testimony of Anthony Lathrop by deposition, which took place on 6 February 2001.
18. The parties have stipulated into evidence in this matter the following: all forms (Forms 19, 33, and 33R, the latter two of which were previously marked as stipulated exhibits 7 and 8) and orders of the North Carolina Industrial Commission (specifically, the orders entered by the Commission on 11 June 1998, 8 October 1998, and 8 September 1999); the Agreement of Final Settlement and Release (previously marked as stipulated exhibit 2); all correspondence between the parties relating to the Agreement of Final Settlement and Release (previously marked as stipulated exhibits 4 through 6); the Order Approving Compromise Settlement Agreement (previously marked as stipulated exhibit 3); all exhibits admitted into evidence at the 3 December 1997 hearing (stipulated exhibits 1 through 9); the pretrial agreement entered into by the parties on 6 April 1999; plaintiff's motion to set aside the compromise settlement agreement dated 27 February 1997; the deposition transcripts of Ronnie E. Rowell and Anthony T. Lathrop, and all medical records that were in existence at the time of the approval of the compromise settlement agreement (previously marked as stipulated exhibit 1). In addition, the testimony taken at the 3 December 1997 hearing of plaintiff and of adjuster Robert R. Thompson is incorporated into the record.
19. The issues to be determined by the Full Commission are whether the compromise settlement agreement should be set aside, and whether defendants are entitled to sanctions pursuant to N.C. Gen. Stat. §97-88.1.
 ***********
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable injury by accident to his back on 5 August 1994. Plaintiff was 33 years old at the time of the injury.
2. Plaintiff was treated by Dr. Stewart T. Harley, an orthopedic surgeon, who diagnosed a herniated disc at L5-S1. On 7 October 1994, Dr. Harley performed a microlumbar discectomy at L5-S1 on the right with decompression of the S1 nerve root.
3. On 11 January 1995, Dr. Harley assessed plaintiff as being at maximum medical improvement with a ten percent permanent partial impairment rating to his back on the basis of intermittent back and leg pain. Dr. Harley gave plaintiff a prescription for a corset to wear when working and advised using a pillow when driving, but did not place any work restrictions on plaintiff. Dr. Harley released plaintiff to return as needed.
4. Plaintiff attempted to return to work for defendant-employer driving a truck. Plaintiff was able to work for only three or four days and then had to stop due to pain. Defendant-employer had no other suitable jobs available for plaintiff after his unsuccessful return to work. There is conflicting testimony regarding whether or not defendant-carrier had knowledge of plaintiff's unsuccessful return to work.
5. At the time of his release from Dr. Harley's care, plaintiff was receiving weekly temporary total disability checks and those checks continued pursuant to the provisions of the Form 21 that defendants previously sent to plaintiff. However, plaintiff contacted Robert R. Thompson, Branch Claims Manager for Kemper Insurance Companies, and stated that he was having a difficult time living off his weekly benefit check. In response to plaintiff's statement, Mr. Thompson offered to pay plaintiff his disability rating in a lump sum under the provisions of N.C. Gen. Stat. § 97-31.
6. Mr. Thompson explained to plaintiff that the ten percent permanent partial disability rating to his back would give him $4,500.00. Plaintiff refused this amount but later, through negotiations with Mr. Thompson, agreed to a lump sum payment of $10,000.00 to settle his workers' compensation claim. Mr. Thompson explained to plaintiff that if they agreed upon a final settlement amount for a compromise settlement agreement plaintiff would not be entitled to any additional workers' compensation benefits, either medical or any other type of benefits. Plaintiff agreed to settle his claim for the $10,000.00 offered.
7. Mr. Thompson forwarded plaintiff's medical records and a printout showing the ongoing temporary total disability payments to plaintiff to Anthony Lathrop, attorney for defendant-carrier. Also indicated on the printout, in a handwritten note, was the total amount due for permanent partial disability, $4,500.00, and the total offer amount of $10,000.00. Apart from plaintiff's medical records, the computer printout was the only information Mr. Lathrop was provided regarding plaintiff's claim. Using this information, Mr. Lathrop drafted the compromise settlement agreement by inserting plaintiff's information into his firm's standard compromise settlement agreement language.
8. Mr. Lathrop testified that he knew that plaintiff was not working at the time that he drafted the compromise settlement agreement, but was not aware of the fact that plaintiff had attempted an unsuccessful return to work. Mr. Lathrop inserted language into the clincher which stated that plaintiff was certifying that he was not seeking partial or total wage loss. Because Mr. Lathrop used this particular language, he did not include additional provisions relating to plaintiff's age, education level and vocational history When asked by plaintiff's counsel at his deposition why he did not contact plaintiff to certify that plaintiff agreed with the language inserted in the clincher, Mr. Lathrop stated that upon receiving the agreement plaintiff signed, he assumed that plaintiff read the agreement and therefore agreed to its terms.
9. Upon completing the compromise settlement agreement, as was his law firm's custom when dealing with unrepresented claimants, Mr. Lathrop placed a red "X" on the line for plaintiff's signature. Plaintiff signed the agreement upon receipt, had it notarized as instructed by defendants, and sent it back to Mr. Lathrop.
10. After the parties executed the compromise settlement agreement, it was sent to the North Carolina Industrial Commission for review and approval. Then-Special Deputy Commissioner Ronnie E. Rowell reviewed the agreement and the attached medical records. Based on this information, Special Deputy Commissioner Rowell recommended to the Executive Secretary that the agreement be approved.
11. In his deposition testimony, Special Deputy Commissioner Rowell detailed the process used by the Commission for reviewing compromise settlement agreements. He stated that in this particular case, and as usual in every case that he reviewed, he started with the information provided in the compromise settlement agreement. Next, he reviewed the documentation contained in the Industrial Commission file, including any Industrial Commission forms. Finally, Mr. Rowell examined the medical records submitted with the agreement. Mr. Rowell indicated that he used a checklist that included information such as the age of the claimant, his or her work status, the average weekly wage, compensation rate, any rating information pursuant to N.C. Gen. Stat. § 97-31, and some information about the offer pursuant to the settlement including the consideration amount over the rating, any information relating to whether there are any unpaid medicals and whether or not they will be paid as part of the settlement.
12. Special Deputy Commissioner Rowell testified that he thoroughly reviewed all of the information submitted with the compromise settlement agreement and the entire Commission file. He noted that the medical records indicated that plaintiff was released to return to work with a ten percent permanent partial disability rating to his back. Based on his knowledge that plaintiff was 33 years old and had been released to a manual labor job, Mr. Rowell stated that he felt that the terms of the agreement were fair and complied with the requirements of Rule 502. Additionally, Mr. Rowell stated that he was comfortable with the offer of $10,000.00 in the case which was over twice the amount plaintiff was entitled to receive under N.C. Gen. Stat. § 97-31.
13. The Full Commission does not find plaintiff's pursuit of this claim to be based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. A compromise settlement agreement cannot be set aside absent a showing of error due to fraud, misrepresentation, undue influence or mutual mistake. N.C. Gen. Stat. § 97-17. The record contains no evidence of any fraud, undue influence or mutual mistake. Rather, plaintiff bases his request to set aside the compromise settlement agreement on misrepresentation. The essential elements of misrepresentation are: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; (4) which does in fact deceive; (5) resulting in damage to the injured party. 15 Strong's N.C. Index 4th, Fraud, Deceit, and Misrepresentation § 7 (1992).
2. In the present case, plaintiff contends that defendants committed misrepresentation upon both plaintiff and the Commission. Specifically, plaintiff argues that defendants misrepresented to plaintiff the fact that he may have been entitled to elect a more favorable remedy, such as ongoing temporary total disability compensation benefits. The record is unclear whether Mr. Thompson, the claims manager, had knowledge of or understood what additional benefits plaintiff, under certain fact situations, might have been entitled to receive. Plaintiff also argues that defendants misrepresented to the Commission that plaintiff had certified that he was not seeking partial or total wage loss benefits. The actions or inactions by defendants do not rise to the level of misrepresentation. First of all, there is no proof of the essential element of intent to deceive either plaintiff or the Commission on the part of any agent of defendants. Additionally, the courts have not imposed a duty on insurance adjusters or defense attorneys to explain all possible options to an unrepresented plaintiff. Therefore, there is no basis for a claim for misrepresentation by defendants.
3. When a compromise settlement agreement is submitted for review and approval to the Industrial Commission, the Commission has an obligation to act in a judicial capacity and thereby to undertake a full investigation to determine that the terms of the settlement agreement are fair and just to plaintiff. Vernon v. Steven L. Mabe Builders, 336 N.C. 425,444 S.E.2d 191 (1994); Caudill v. Manufacturing Co., 258 N.C. 99,128 S.E.2d 128 (1962). In this particular case, the Special Deputy Commissioner acted in a judicial capacity and made a full investigation in reviewing the agreement submitted by the parties.
4. Plaintiff's pursuit of this claim was not unreasonable. N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
For the reasons set forth herein, plaintiff's claim to set aside the compromise settlement agreement approved by the Industrial Commission on 2 March 1995 in the above-captioned case is HEREBY DENIED.
This the _____ day of January 2002.
 S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________________________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
S/_____________________________ THOMAS J. BOLCH COMMISSIONER
LKM/mhb