IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-214

Filed 3 December 2024

N.C. Industrial Commission, I.C. No. 21-711149

DAVID W. COLLINS, Employee, Plaintiff,

v.

WIELAND COPPER PRODUCTS, LLC, Employer, FARMINGTON CASUALTY COMPANY, Carrier, (CCMSI, Third-Party Administrator), Defendants.

Appeal by Defendants from Opinion and Award entered 26 September 2023 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 September 2024.

*Daggett Shuler, Attorneys at Law, by Michael P. Hummel, for plaintiff-appellee.*

*Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, Neil P. Andrews, and Linda Stephens, for defendants-appellants.*

HAMPSON, Judge.

**Factual and Procedural Background**

Wieland Copper Products, LLC (Wieland Copper) and Farmington Casualty Company (collectively, Defendants) appeal from an Opinion and Award entered by the Full Commission of the North Carolina Industrial Commission concluding David Collins (Plaintiff) suffered an injury by accident and granting Plaintiff's claim for compensation under the North Carolina Workers' Compensation Act (the Act). The Record before us tends to reflect the following:

On 15 June 2009, while working for Wieland Copper, Plaintiff tore his right shoulder rotator cuff loading a hopper (2009 Injury). Plaintiff received workers' compensation benefits for the Injury.

Following the 2009 Injury, Plaintiff received medical treatment with Dr. John Ritchie, who performed rotator cuff repair surgery on Plaintiff's right shoulder on 17 February 2010. On 2 August 2010, Plaintiff was deemed to be at maximum medical improvement and assigned permanent physical restrictions, including no lifting over fifty pounds, lifting above table height, or repetitive lifting. On 24 May 2011, Plaintiff returned to Dr. Ritchie with pain in his shoulder; Dr. Ritchie referred Plaintiff to Dr. David Janeway, an orthopedic surgeon, for a second opinion.

Plaintiff saw Dr. Janeway for the first time on 16 June 2011. On 10 August 2011, Dr. Janeway performed a second rotator cuff repair surgery on Plaintiff's right shoulder. On 12 January 2012, Plaintiff was released to regular duties and assigned a twenty percent permanent partial impairment rating. Just over a year later, on 19 March 2013, Plaintiff returned to Dr. Janeway with shoulder pain. On 6 June 2013, Plaintiff underwent an MRI arthrogram, revealing a re-tear of Plaintiff's right rotator cuff; after reviewing the MRI, Dr. Janeway recommended a third rotator cuff surgery, which Plaintiff elected to forgo.

In September 2013, Plaintiff saw Dr. Kevin Supple for an independent medical examination. Dr. Supple concluded Plaintiff had rotator cuff tear arthropathy, meaning Plaintiff had a "significantly retracted" tear in his rotator cuff that could

lead to pain, weakness, and functional limitations. He assigned Plaintiff a thirty percent impairment rating. Dr. Supple also concluded overall Plaintiff had excellent motion and strength in his shoulder despite the extent of the tear.

On 17 October 2013, Plaintiff saw Dr. Janeway again, and Dr. Janeway increased Plaintiff's impairment rating for his right arm to a total of thirty five percent. Dr. Janeway also assigned additional permanent work restrictions of no overhead work or work above chest level. Plaintiff returned to work for Wieland Copper without further pain or issue.

A disagreement subsequently arose between Plaintiff and Defendants over the appropriate permanent partial disability rating to assign and whether additional medical treatment and compensation would be required for the 2009 Injury. On 18 April 2014, Plaintiff and Defendants entered into a Compromise Settlement Agreement, under which Defendants agreed to pay Plaintiff a lump sum of $125,000 in full resolution of the 2009 Injury. The payment was to be "the only" compensation Plaintiff was entitled to "for his entire life" for the 2009 Injury. The Industrial Commission approved the Agreement on 23 May 2014.

On 24 November 2020, Plaintiff was reassigned from his regular job duties that accommodated his permanent work restrictions to work on a "winder" machine. Working on the winder requires the operator to reach forward with both of his arms and "band" spooled copper. Shortly after beginning work on the winder, Plaintiff extended his right arm out, slightly higher than his chest, to band a spool of copper

and felt a "pop" in his right shoulder. Plaintiff reported the pain in his shoulder to both his supervisor and the Environmental Health and Safety Director. The Environmental Health and Safety Director sent Plaintiff to a local hospital for medical evaluation on 6 January 2021. The local provider put Plaintiff's arm in a sling and advised that he needed to see a specialist. On 23 February 2021, Plaintiff saw Dr. Janeway for an MRI arthrogram. The MRI showed "severe" thinning of the four tendons of the rotator cuff. On 13 April 2021, Dr. Janeway performed an arthroplasty on Plaintiff's right shoulder.

Plaintiff continued to work until 2 March 2021. On 3 March 2021, Plaintiff filed a Form 18, Notice of Accident to Employer and Claim of Employee, alleging that, on 24 November 2020, he sustained an injury to his right arm, elbow, shoulder, and hand (2020 Injury). Plaintiff's request for workers' compensation benefits was denied on 10 March 2021 on the grounds that Plaintiff's "condition pre-existed the alleged date of injury [and] is therefore not compensable." Plaintiff appealed the denial and requested a hearing before the North Carolina Industrial Commission. The matter was heard before a Deputy Commissioner on 16 November 2021. Defendants maintained that Plaintiff had a pre-existing condition, and his current claim was "barred" by the 2014 Settlement. On 14 July 2022, the Deputy Commissioner entered an Opinion and Award concluding Plaintiff experienced an injury by accident on 24 November 2020 which "materially aggravated Plaintiff's pre-existing right shoulder condition[.]" The Deputy Commissioner also concluded N.C. Gen. Stat. § 97-6, which

provides that "[n]o contract or agreement . . . shall in any manner operate to relieve an employer in whole or in part, of any obligation created by [the Act], except as . . . otherwise expressly provided," invalidated any language in the 2014 Settlement that "could be construed as relieving Defendants of any obligation they have under the Act for any claims filed by Plaintiff for any future alleged injury[.]" Plaintiff was awarded "all medical expenses incurred, or to be incurred" for treatment of his shoulder and temporary total disability benefits at the weekly rate of $783.24 beginning 10 March 2021 and continuing until he returned to work or until further order of the Commission.

Defendants appealed to the Full Commission. The matter was heard before the Full Commission on 8 December 2022. On 26 September 2023, the Full Commission filed an Opinion and Award concluding Plaintiff's 2020 Injury was "separately compensable" from the 2009 Injury by virtue of it being a material aggravation of the 2009 Injury. The Full Commission also concluded, pursuant to N.C. Gen. Stat. § 97-6, "to the extent any language in the April 18, 2014 Agreement can be construed as Plaintiff releasing Defendants from liability for his November 24, 2020 injury . . . such language is unenforceable as a matter of law." The Full Commission entered an award in Plaintiff's favor. On 24 October 2023, Defendants timely filed Notice of Appeal.

## Issue

The dispositive issue on appeal is whether the Commission erred in concluding

Plaintiff's 24 November 2020 Injury was separately compensable from the 2009 Injury and, thus, not barred by the parties' 18 April 2014 Compromise Settlement Agreement.

## Analysis

"Our standard of review for a Commission's opinion and award is limited to whether the Commission's findings of fact support its conclusions of law. Where the competent evidence supports the Commission's findings, those findings are binding on appeal." *Aldridge v. Novant Health, Inc.*, 280 N.C. App. 372, 378-79, 867 S.E.2d 721, 725 (2021) (citation omitted). "Thus, on appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation and quotation marks omitted). "[F]indings of fact which are left unchallenged by the parties on appeal are presumed to be supported by competent evidence and are, thus[,] conclusively established on appeal." *Chaisson v. Simpson*, 195 N.C. App. 463, 470, 673 S.E.2d 149, 156 (2009) (citation and quotation marks omitted). We review the Commission's conclusions of law de novo. *Id.* (citation omitted).

Defendants do not challenge any Finding of Fact regarding the compensability of the 2020 Injury. Instead, Defendants argue any recovery for the 2020 Injury is foreclosed by the 2014 Settlement Agreement. Defendants contend the following:

Plaintiff's 2020 Injury was an aggravation of the 2009 Injury, not a separate injury; the Settlement releases Defendants from any claim relating to the 2009 Injury; thus, because Plaintiff's claim for the 2020 Injury arises out of the 2009 Injury, by nature of it being an aggravation of that Injury, it is foreclosed by the Settlement. The Commission, however, concluded, pursuant to N.C. Gen. Stat. § 97-6, the Settlement is unenforceable to the extent it precludes compensation for the 2020 Injury. Defendants argue the Commission erred by relying on N.C. Gen. Stat. § 97-6 in reaching this conclusion because N.C. Gen. Stat. § 97-17 controls the enforceability of settlement agreements under the Act.

Much of Defendants' argument contests the Commission's determination that the Settlement is unenforceable under N.C. Gen. Stat. § 97-6. Defendants argue N.C. Gen. Stat. § 97-17 is controlling on the enforceability of compromise settlement agreements in North Carolina Workers' Compensation claims and the Commission's reliance on N.C. Gen. Stat. § 97-6 was improper. In support of this position, Defendants cite to *Tellado v. Ti-Caro Corp.*, wherein this Court held N.C. Gen. Stat. § 97-6 did not bar the enforceability of a settlement agreement. 119 N.C. App. 529, 534, 459 S.E.2d 27, 31 (1995). The plaintiff-employee in *Tellado* sought to set aside a settlement that prohibited him from bringing a claim for retaliatory discharge, arguing the agreement was unenforceable under N.C. Gen. Stat. § 97-6. *Id.* at 532-33, 459 S.E.2d at 30. The Court in *Tellado* held N.C. Gen. Stat. § 97-6 does not apply to retaliatory discharge claims because retaliatory discharge is not an "obligation"

contemplated by N.C. Gen. Stat. § 97-6. *Id.* at 534, 459 S.E.2d at 31. The Court said nothing about whether N.C. Gen. Stat. § 97-6 might bar a settlement precluding compensation for an injury by accident, as the Commission here determined.

Defendants further cite to a host of cases discussing the enforceability of settlement agreements under N.C. Gen. Stat. § 97-17. Each case cited, however, deals with factual scenarios where one of the parties sought to set aside a settlement agreement, which Plaintiff here does not purport to do, or with a second injury not separately compensable from a first injury, unlike Plaintiff's 2020 Injury, which the Commission found to be separately compensable from the 2009 Injury. For example, in *Caudill v. Manufacturing Co.*, the plaintiff-employee injured his back, requiring surgery, after which he received workers' compensation benefits for temporary total disability. 258 N.C. 99, 100, 128 S.E.2d 128, 129 (1962). The employee and employer entered into a "full, final and complete settlement of any and all claims, past, present and future, arising out of the accident in question[.]" *Id.* at 100-01, 128 S.E.2d at 129. Several weeks later, an abscess formed at the site of the operation, resulting in the employee having to undergo additional surgery and a three-month hospitalization. *Id.* at 101, 128 S.E.2d at 129. The employee then sought to rescind the compromise agreement in order to obtain additional workers' compensation benefits. *Id.* The Commission agreed to the rescission, and our Supreme Court reversed, holding "the parties were contracting with reference to future uncertainties and were taking their chances as to future developments, relapses and complications, or lack thereof." *Id.*

at 106, 128 S.E.2d at 133. Here, unlike in *Caudill*, Plaintiff does not seek to rescind the Settlement. Instead, Plaintiff contends the Settlement is entirely inapplicable to his present claim. Additionally, here the Commission found the 2020 Injury was a separately compensable injury by accident, whereas the employee in *Caudill* was seeking further compensation for complications of one indivisible injury. *Id.* at 100-01, 128 S.E.2d at 129.

Other cases cited by Defendants are distinguishable for similar reasons. In *Holden v. Boone*, the Court held only the Industrial Commission has jurisdiction to set aside an approved settlement agreement and only on the grounds provided by N.C. Gen. Stat. § 97-17. 153 N.C. App. 254, 259, 569 S.E.2d 711, 714 (2002). Similarly, in *Glenn v. McDonald's*, the defendant-employer petitioned the Commission to set aside a settlement agreement for reasons that fell outside those provided in N.C. Gen. Stat. § 97-17. 109 N.C. App. 45, 46-47, 425 S.E.2d 727, 728-29 (1993). The Court held the Commission does not have the authority to do so. *Id.* at 48-49, 425 S.E.2d at 730. We reiterate that, unlike the plaintiffs in *Tellado*, *Caudill*, *Holden*, and *Glenn*, Plaintiff does not seek to set aside the 2014 Settlement. Therefore, these cases are distinguishable from the facts before us.

Indeed, ultimately, our analysis does not hinge on the enforceability of the Settlement Agreement in and of itself. This is so because the Commission ultimately determined the Settlement Agreement simply did not apply to the 2020 Injury. Here, the Commission concluded the 2020 Injury constituted both a compensable injury by

accident for the purposes of N.C. Gen. Stat. § 97-2(6) and a material aggravation of

Plaintiff's pre-existing shoulder condition:

> (3) The Full Commission concludes that Plaintiff's workplace injury on November 24, 2020 constituted an injury by accident because it resulted from an interruption of his work routine . . .
>
> . . . .
>
> (5) The Full Commission concludes that the greater weight of the evidence, including the testimony of Dr. Janeway and Dr. Supple, establishes that Plaintiff's workplace injury on November 24, 2020 materially aggravated his pre-existing shoulder condition, and such condition is compensable.
>
> . . . .
>
> (16) The Full Commission concludes, pursuant to N.C. Gen. Stat. § 97-6, that to the extent any language in the April 18, 2014 Agreement can be construed as Plaintiff releasing Defendants from liability for his November 24, 2020 injury, which is an injury separately compensable from the June 15, 2009 injury by virtue of it being a material aggravation of said prior injury, such language is unenforceable as a matter of law. *Id.* Accordingly, the April 18, 2014 Agreement does not bar Plaintiff's current claim. *Id.*

In support of these Conclusions, the Commission made specific Findings, including

the following:

> (2) . . . [O]n June 15, 2009, Plaintiff sustained a compensable injury by accident to his right shoulder while working for Defendant-Employer.
>
> (3) Following the June 15, 2009 accident, Plaintiff received medical treatment with Dr. John Ritchie with Orthopaedic Specialists of the Carolinas. On February 17, 2010, Dr. Ritchie performed a right shoulder rotator cuff repair. On August 2, 2010, Plaintiff was deemed to be at maximum medical

improvement ("MMI") and assigned permanent restrictions of no lifting over 50 pounds, no lifting above table height, and no repetitive lifting.

. . . .

(11) On April 18, 2014, Plaintiff, Defendant-Employer, and PMA Group entered into an Agreement for Final Compromise Settlement and Release . . . Plaintiff received a payment "in one lump sum, without commutation" of $125,000.00, which would be "the only payment Employee-Plaintiff will be entitled for his entire life" for the June 15, 2009 injury . . .

. . . .

(16) Plaintiff testified that he did not have any issue with his right shoulder from the time he returned to work for Defendant-Employer in 2014 following his prior injury until his November 24, 2020 injury, and Plaintiff's medical records corroborate that testimony.

. . . .

(19) On November 24, 2020, Christy Reyes, a plant supervisor for Defendant-Employer, moved Plaintiff to the Level Winder 4 machine to perform the bander operator position. Plaintiff had never worked on the Level Winder 4 machine and Ms. Reyes told Plaintiff that a co-worker would show him how to perform the bander operator position.

. . . .

(23) On November 24, 2020, while banding a coil of copper at the top-most notch, Plaintiff felt a pop in his right shoulder. Plaintiff was reaching out with his right arm above chest height, holding the bander in his right hand, and tightening the copper strap when he felt the pop.

. . . .

(30) On February 23, 2021, Plaintiff presented to Dr. David

Janeway. Plaintiff reported he was using a banding machine at work and felt a pop in the anterior aspect of the shoulder with increased pain in the shoulder. Dr. Janeway ordered an MR arthrogram and assigned Plaintiff to restricted duty.

. . . .

(32) Plaintiff returned to Dr. Janeway on March 31, 2021 for review of the MRI. Dr. Janeway reviewed the MRI films noting evidence of the "previous tendon repair with severe infraspinatus supraspinatus tendon attenuation 4 cm tear humeral head high-riding partial-thickness tear of the mid and superior fibers of the subscapularis with retraction cleft tear anterior labrum." Dr. Janeway noted a "new subscap tear" and "thinning of old revision cuff repair." Dr. Janeway recommended a reverse shoulder arthroplasty and restricted Plaintiff to one-handed work only.

(33) Dr. Janeway performed a right reverse total shoulder arthroplasty on April 13, 2021. Dr. Janeway kept Plaintiff out of work after the surgery. Plaintiff continues to treat with Dr. Janeway for his right shoulder condition. As of October 1, 2021, Dr. Janeway continued to restrict Plaintiff from any work.

. . . .

(36) . . . Dr. Supple further testified that Plaintiff's pre-existing shoulder condition made him more likely to reinjure his shoulder or cause further damage to it than someone who did not have a torn rotator cuff. Dr. Supple testified that if Plaintiff were not experiencing problems with his shoulder prior to the incident on November 24, 2020, the incident was an aggravation of his pre-existing right shoulder condition. He opined that if Plaintiff had been constantly reporting shoulder pain prior to November 24, 2020, then the incident caused recurrent symptoms, not an aggravation . . .

. . . .

(40) . . . Dr. Janeway testified that Plaintiff's November 24, 2020 injury aggravated or exacerbated Plaintiff's pre-existing shoulder condition and that Plaintiff remains at out-of-work status as a

result of the November 24, 2020 injury.

(41) Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff's workplace injury on November 24, 2020 resulted from an interruption of his work routine. In making this finding, the Full Commission considers that Plaintiff performed the duties of a bander operator for the first time on that date, and therefore, the duties of that position were not yet routine to him.

(42) Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff's workplace injury on November 24, 2020 materially aggravated his pre-existing shoulder condition . . . .

This Court in *Moore v. Federal Express* considered an appeal by a defendant-employer who argued the plaintiff-employee's injury was not a separate injury by accident but only a change in condition. 162 N.C. App. 292, 297, 590 S.E.2d 461, 465 (2004). In *Moore*, the employee sustained two separate back injuries while working for the same employer. The first injury was uncontested. *Id.* at 294, 590 S.E.2d at 463. Approximately five years later, the employee sustained a second injury to the same part of his back. *Id.* at 294-95, 590 S.E.2d at 463-64. The Commission found that although the employee had experienced periodic flare-ups of back pain over the last five years, the second back injury constituted an "injury by accident . . . which substantially aggravated [the employee's] pre-existing back condition [created by the first injury]." *Id.* at 296, 590 S.E.2d at 464. The employer appealed, arguing the second injury was only a change of condition stemming from the first back injury. *Id.* at 297, 590 S.E.2d at 465. This Court held the Commission did not err in awarding

workers' compensation benefits, citing the Commission's findings that the employee's current back problems "were a result of the [second injury], which substantially aggravated his pre-existing back condition[,]" the pain from the second injury was "different and substantially more severe" than the first injury, and the injury "directly resulted from" a distinctly separate accident. *Id.* at 298, 590 S.E.2d at 465.

Here, the Commission made similar Findings. The Commission found the 2020 Injury was a material aggravation of Plaintiff's pre-existing shoulder condition. The Commission also found the pain from the 2020 Injury was new. Lastly, the Commission found Plaintiff's 2020 Injury was the result of an accident banding copper, whereas the 2009 Injury was the result of an accident loading a hopper. As in *Moore*, these Findings support a conclusion the two injuries arose from distinctly separate accidents. Further, and unlike *Moore*, Defendants do not challenge any Finding that Plaintiff experienced a separately compensable injury by accident.

Defendants challenge only the Commission's Finding of Fact 46, arguing it is more properly characterized as a Conclusion of Law. Finding of Fact 46 addresses the purpose of the $125,000 payment made as part of the Settlement. We do not address this argument because, as we have explained, the Settlement is inapplicable to Plaintiff's 2020 Injury. Defendants have not challenged any Finding relating to the occurrence or compensability of the 2020 Injury, therefore those Findings are binding on appeal. *See Chaisson*, 195 N.C. App. at 470, 673 S.E.2d at 156. As in *Moore*, the Commission's Findings support its Conclusion that the 2020 Injury is

separately compensable from the 2009 Injury. As such, the 2020 Injury falls outside of the terms of the Settlement because it is not a "reopening" of the 2009 claim.

Thus, the Commission's Findings support its Conclusion Plaintiff's 2020 Injury was the result of an injury by accident separately compensable from his 2009 Injury. Therefore, in turn, the Commission did not err in determining the Settlement Agreement did not bar Plaintiff's claim for the 2020 Injury. Consequently, the Commission did not err in entering its Opinion and Award in favor of Plaintiff.

### **Conclusion**

Accordingly, for the foregoing reasons, we affirm the Commission's Opinion and Award.

AFFIRMED.

Judges CARPENTER and FLOOD concur.